No. 4718.

(Court of Appeal, Parish of Orleans.)

## A. A. GUNBY vs. R. P. LESASSIER ET AL.

T. M. & J. D. Miller and C. F. Fletchinger for plaintiff and appellee.

John Dymond, Jr., Omer Villere, Dart & Kernan, Lazarus, Michel & Lazarus for defendant.

Morgan & Milner for appellant.

ST. PAUL, J.—The undisputed facts of this case are as follows:

The New Orleans Pure Milk Co., as owner, let a building contract to W. T. Carey & Bro., and the latter sub-let part of the contract to R. P. LeSassier. LeSassier purchased from A. A. Gunby materials for use in the building amounting to $1,254.58.

Gunby was not paid for his materials and served a sworn statement of his claim on the Pure Milk Co. At the time of his service the Pure Milk Co. owed Carey & Bro. more than the amount due Gunby, but Carey & Bro. owed LeSassier only $922.03. The Pure Milk Co. retained in its hands, out of the amount due Carey & Bro., the full amount of Gunby's claim.

Thereafter LeSassier went into bankruptcy and the

Pure Milk Co. passed into the hands of a receiver. By consent between counsel representing Gunby, the trustee for LeSassier, and the receiver for the Pure Milk Co. a judgment was entered in the court a qua in favor of Gunby and against the trustee and receiver **in solido** for the full amount of Gunby's claim.

Carey & Bro. were not parties to the suit nor to the judgment, and now appeal therefrom as third persons prejudiced thereby.

There is a motion to dismiss this appeal on the ground that Carey & Bo. are without interest in the controversy.

So far as concerns the judgment against the trustee of LeSassier's bankrupt estate, Carey & Bro. have indeed no interest therein, and that part of the judgment cannot be disturbed. But it is clear that the Pure Milk Co. was, and the receiver is now, only a stakeholder, and the real parties interested in the fund retained by the Pure Milk Co., and now held by the receiver, are the present appellant W. T. Carey & Bro. The motion to dismiss is, therefore denied.

The first contention made by appellants is that Gunby was not entitled thus summarily to arrest the moneys in the hands of the Pure Milk Co. for a debt due him by LeSassier, a sub-contractor; that the right to proceed in that manner is confined to those who have claims directly against the first contractor.

Such is not our understanding of the Code. **(C. C., Art. 2772.)** The right is given to "every mechanic doing labor on the building," and is not confined to those employed directly by the first contractor, and all the provisions of the article apply as well "to the persons furnishing materials"; and the same proceedings may be had, and the same liability enforced not only against the contractor and the owner, but against "other persons."

The purpose of the Code seems to us clear.

It intends to afford laborers and furnishers of mate-

rials, a simple, expeditious and inexpensive method of obtaining payment of what is due them. To confine the remedy to those alone who have dealt directly with the contractor would not only do violence to the words of the article, but would defeat the whole purpose thereof; for it is a matter of common knowledge, that the division of labor has progressed so far, that no building, even of modest proportions, is now built except by a series of sub-contracts, and the laborer and furnisher of materials often deals with some sub-contractor two or three times removed from the original contractor.

Appellants further contend that in any event Gunby could not arrest in the hands of the Pure Milk Co., any more of the moneys due appellants than appellants then owed LeSassier, who was the immediate debtor of Gunby.

This contention seems to us correct.

The owner served with an attested account must retain the amount "out of his subsequent payments to the contractor."

### Civil Code, Art. 2772.

Where the owner has paid the contractor, the laborer or furnisher of materials has no action against him (C. C., Art. 2773), unless payments have been made by anticipation. (C. C., Art. 2774.) The purposes of the Code was, therefore, not to make the owner liable in any way for the debts of the contractor, but simply to permit the laborer to arrest in the hands of the owner whatever might be due the contractor. The whole proceeding amounts simply to a sort of extra-judicial seizure, as it were, and the seizure affects only what may happen to be due the contractor.

We are of opinion that a contractor occupies, toward those who furnish labor and materials to a sub-contractor, the same relative position as the owner occupies towards

— 29 —

those who furnish labor and materials to the contractor himself.

The owner is liable for the debts of his contractor only up to the amount that he himself owes the contractor, and the contractor in turn is liable for the debts of his sub-contractor only to the extent that he himself is indebted to that sub-contractor.

Hence it is our conclusion that Gunby could arrest in the hands of the Pure Milk Co., out of the moneys due Carey & Bro. only so much as Carey & Bro. owed LeSassier—that is to say, $922.03.

So far as the judgment below takes from the stakeholder—i. e., the receiver—anything in excess of this amount it is prejudicial to the appellants, and they are entitled to have the same amended accordingly.

For the reasons assigned it is now ordered that the judgment appealed from be amended by decreasing the amount allowed plaintiff, A. A. Gunby, against the German-American Savings Bank & Trust Co., receiver of the New Orleans Pure Milk Co., from $1,254.58, to nine hundred and twenty-two 03/100 dollars ($922.03), and in all other respects said judgment is affirmed, the appellee, A. A. Gunby to pay the costs of this appeal.

Amended and affirmed.

November 29, 1909.

Rehearing refused December 13, 1909.

Writ refused by Supreme Court January 10, 1910.